IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BELLSOUTH TELECOMMUNICATIONS, LLC d/b/A AT&T ALABAMA; AT&T CORP., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | CIVIL NO. 18-00335-CG-N |
| CITY OF DAPHNE, a municipality under the State of Alabama; DANE HAYGOOD, Mayor of City of Daphne, in both his official and personal capacity; & JEREMY SASSER, Public Works Director of City of Daphne, in both his official and personal capacity, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**TEMPORARY RESTRAINING ORDER AND ORDER SETTING HEARING ON PRELIMINARY INJUNCTION**

This matter is before the Court on Plaintiffs' motion for temporary restraining order ("TRO") and preliminary injunction (Doc. 2) and the Plaintiffs' certification of notice efforts pursuant to Rule 65(b) (Doc. 7). For the reasons explained below, the Court finds that the motion for TRO should be granted and that a hearing should be scheduled on the motion for preliminary injunction.

**I. Background**

Plaintiffs have communication lines, fiber optic cables and related facilities ("lines") buried throughout the City of Daphne ("the City"). (Doc. 2-2, p. 2 ¶ 2). The

1

lines are located within public rights-of-way and private easements, and they provide communications pathways for the public, private industry, and government agencies, including the City's residents, emergency 911 services, and military installations. *Id.* at ¶¶ 2-3. The lines also carry traffic communications of other large communications companies. *Id.*

To prevent damage to the lines, Plaintiffs regularly and routinely install utility warning markers ("markers") above the buried lines and cables. *Id.* at ¶ 6. Markers are generally plastic tubes of varying height so that they are easily spotted in tall grass. *Id.* at ¶ 7. The markers provide notice of the presence of the underground lines and remind excavators and blasters to call 811 before beginning their work. *Id.* at ¶ 6.

In March of 2017, the City enacted Ordinance No. 2017-22 ("the Ordinance"), which requires an applicant for a proposed right-of-way construction permit to submit "Construction plans" to the city, under which the utility markers left above ground must be limited to the height of 24 inches for all construction projects involving the installation of buried lines for 500 feet or more. (Doc. 2-2, p. 25 ¶ I(A)(1)(a)(1)(b)). On July 10, 2018 City Code Enforcement Officers began removing Plaintiffs' markers. (Doc. 2-2, ¶ 13). The officers reportedly removed or destroyed at least 317 of Plaintiffs' markers, including markers that were in place prior to the Ordinance and markers that were not in a City right-of-way, but rather on private property or state rights-of-way. (Doc. 2-2, ¶16, Doc. 2-1, ¶ 10). Plaintiffs and Defendants communicated about the issues and at times Defendants agreed to halt

the removal or destruction of the markers, but ultimately gave Plaintiffs until Friday July 27, 2018 to submit a proposed compliance plan that would outline in detail their plan to bring all of its markers into compliance and have indicated they would resume removal of the markers. (Doc. 2-4, pp. 8-9).

## II. LEGAL STANDARD

This court previously noted the applicable standard for preliminary injunctive relief in Hammock ex rel. Hammock v. Keys et al., 93 F. Supp. 2d 1222 (S.D. Ala. 2000):

> A party seeking a preliminary injunction must establish the following four factors: (1) a substantial likelihood of success on the merits; (2) a threat of irreparable injury; (3) that its own injury would outweigh the injury to the nonmovant; and (4) that the injunction would not disserve the public interest. Tefel v. Reno, 180 F.3d 1286, 1295 (11th Cir.1999); McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir.1998). The Court should be mindful that a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant has clearly satisfied the burden of persuasion as to the four requisites. McDonald's, 147 F.3d at 1306; Northeastern Fl. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville, 896 F.2d 1283, 1285 (11th Cir.1990).

Id., at 1226-27. The same standard applies to a request for a temporary restraining order as to a request for a preliminary injunction. Morgan Stanley DW, Inc., v. Frisby, 163 F. Supp. 2d 1371, 1374 (N.D. Ga. 2001), citing Ingram v. Ault, 50 F.3d 898, 900 (11th Cir.1995). Upon consideration of the evidence presented, the court concludes that plaintiff has not met this burden.

## III. ANALYSIS

### 1. Substantial likelihood of success on the merits

3

In the Complaint, Plaintiffs allege the terms of the Ordinance does not apply to warning markers installed on City rights-of-way before the effective date of the Ordinance. (Doc. 1 ¶ 33). Plaintiffs also claim that, to the extent the Ordinance is interpreted or can be interpreted to apply to warning markers installed before the effective date of the Ordinance, it is unlawful and unenforceable because it constitutes retroactive application of substantive law that impairs Plaintiffs' rights. *Id.* Additionally, Plaintiff contends under the terms of the Ordinance the remedy for any violation does not include the city removing or destroying Plaintiffs' markers, which would violate ALA. CODE § 37-15-10(k) & (iv). After reviewing Plaintiffs' complaint and the arguments contained in the brief in support of their motion, the Court finds that Plaintiffs have sufficiently supported a substantial likelihood of success on the merits.

**2. Threat of irreparable injury**

The Eleventh Circuit has emphasized that "[a] showing of irreparable injury is the *sine qua non* of injunctive relief" and that "the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citations omitted). To pass muster and meet plaintiff's burden of proof, "the asserted irreparable injury must be neither remote nor speculative, but actual and imminent." *Id.* (citations omitted); *see also Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) (explaining that a party is entitled to injunctive relief only if he can show "a real and immediate-as opposed to a merely conjectural or

4

hypothetical-threat of future injury"). In addition to being real and immediate, the threat of harm must be irreparable; indeed, "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *United States v. Jefferson County*, 720 F.2d 1511, 1520 (11th Cir.1983).

Here, the Plaintiffs argue that the Defendants' conduct will jeopardize the safety and continued operation of Plaintiffs' communications facilities upon which countless customers rely. Plaintiffs assert that they face an imminent risk of business interruption and network failures that are likely to impair Plaintiff's ability to meet their contractual obligations, cause reputational harm and result in an unquantifiable loss of customers and good will. Under the facts presented, the Court finds that without injunctive relief, Plaintiffs are likely to suffer immediate irreparable injury that could not be remedied simply by monetary damages. Defendants' removal of Plaintiffs' markers is likely to increase the disruption of Plaintiffs' telecommunications networks, which would cause Plaintiffs to incur significant reputational, legal and other harms of an irreparable nature.

**3. That its own injury would outweigh the injury of the nonmovant**

The Court finds that the threatened harm of granting the TRO is relatively minor to Defendants and is outweighed by the threatened harm to Plaintiffs. Many of Plaintiffs' markers have reportedly been in place for years and the Court finds Defendants will be impacted little by the short delay the TRO would impose.

**4. That the injunction would not disserve the public interest**

Lastly, the Court finds that it is in the public interest that the markers not be destroyed or removed before they can be replaced. Granting the TRO will prevent damage to underground utility cables and prevent the interruption of utility or other services to the general public.

Accordingly, the Court hereby GRANTS Defendants' motion for TRO (Doc. 2) and **ORDERS** as follows:

**Defendants, the City of Daphne, Alabama, Dane Haygood and Jeremy Sasser, and anyone acting on their behalf, shall (a) immediately cease all efforts to remove, modify or destroy any of Plaintiffs' buried utility warning markers, and (b) refrain from any conduct that interferes with, modifies, removes or destroys any of Plaintiffs' buried utility warning markers.**

A hearing on Plaintiffs' motion for a preliminary injunction is set for **August 9, 2018 at 9:00 AM**, it Courtroom 3B, U.S. Courthouse, 155 St. Joseph Street, Mobile Alabama, at which time this temporary restraining order will expire unless extended by Court order.

**SO ORDERED**, at 4:30 P.M. on July, 30, 2018.

    /s/ Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE