IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **BELLSOUTH** | * |
| **TELECOMMUNICATIONS, LLC** | * |
| **d/b/a AT&T ALABAMA;** | * |
| **AT&T CORP.,** | * |
|     **Plaintiffs,** | * |
| | * |
| **v.** | * CIVIL ACTION NO.: CV-18-00335-TM-N |
| | * |
| **CITY OF DAPHNE, a municipality** | * |
| **under the State of Alabama; DANE** | * |
| **HAYGOOD, Mayor of City of** | * |
| **Daphne, in both his official and** | * |
| **personal capacity; & JEREMY** | * |
| **SASSER, Public Works Director of** | * |
| **City of Daphne, in both his official** | * |
| **and personal capacity,** | * |
| | * |
|     **Defendants.** | * |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO ENFORCE PRELIMINARY INJUNCTION**

## Introduction

Defendant City of Daphne files this opposition to Plaintiffs' emergency motion to enforce preliminary injunction (Doc. 43). In responding to that motion and the Show Cause Order of this Court (Doc. 45), the City respectfully asserts that Plaintiffs' motion is frivolous in suggesting that this Court's injunction prevents the City from undertaking legislative action. Plaintiffs' motion also speculatively attributes motivations to the City that are completely unjustified; the City was merely exercising its legislative authority to adopt an improved and clarified Right-of-Way Ordinance to regulate the use of its rights-of-way by any person or entity conducting work in a City right-of-way.

The Plaintiffs ("AT&T") seem to imagine a legal regime in which the federal courts have the power to actually enjoin a city from deliberating on and adopting an ordinance through its duly constituted legislative council. No such power exists. AT&T's tortuous construction of the preliminary injunction entered by this Court — reading it as enjoining the enactment of future ordinances by the City — not only strains the plain meaning of its terms but also ignores the institutional limits on judicial power concerning the legislative process.

AT&T's claim that the City cannot "moot" AT&T's claims for declaratory and injunctive relief by the adoption of a new Ordinance also ignores fundamental principles of law. Newly enacted ordinances, repealing and replacing earlier challenged ordinances, repeatedly result in actions for declaratory and injunctive relief becoming moot.

## I. This Court's Preliminary Injunction Gave No Notice That the Court Was Proscribing the Enactment of a New Ordinance. Nor Could The Court Lawfully Have Done So

AT&T claims that this Court's preliminary injunction — directing the City to cease "all efforts" to remove, destroy or modify any of the Plaintiff's buried utility markers, and to refrain from "any conduct" that interferes with, modifies, removes, or destroys any of Plaintiff's buried utility warning markers — was violated by the City's adoption of a new Ordinance. This is ludicrous. The language of the injunction gives no notice to the City that it would have such a far-reaching impact. Indeed, such an injunction would be beyond the equity powers of this Court.

First of all, the language of the injunction itself certainly gave the City no fair notice that the enactment of a new Right-of-Way Ordinance, standing alone, would violate its proscriptions. Rule 65(d), Fed. R. Civ. Proc. mandates that every order granting an injunction be "specific in terms" and "describe in reasonable detail…the act or acts sought to be restrained…." Under this Rule, "an ordinary person reading the court's order should be able to ascertain from the

2

document itself exactly what conduct is prescribed." Abbott Laboratories v. Unlimited Beverages, Inc., 218 F. 3d 1238, 1240 (11th Cir. 2000)(quoting Amer. Red Cross v. Palm Beach Blood Bank, Inc., 143 F. 3d 1407, 1411 (11th Cir. 1998)); *see* Hughey v. JMS Development Corp., 78 F. 3d 1523, 1531 (11th Cir. 1996)(Specificity standards of Rule 65(d) are designed to give those enjoined "fair and precisely drawn notice of what the injunction actually prohibits.")(quoting Epstein Family Partnership v. Kmart Corp., 13 F. 3d 762, 771 (3 Cir. 1994)). "A district court may not expand the decree or impose obligations that are not unambiguously mandated by the decree itself." Id. The mere adoption of an ordinance is not conduct that has interfered with, modified, removed or destroyed any of the Plaintiff's utility warning markers. Nor does the adoption of an ordinance itself constitute an "effort" to remove, modify or destroy any of the Plaintiff's markers. The TRO was entered on the basis of evidence of physical removal of utility markers by the City. Its application to future regulatory conduct, such as the mere enactment of a new ordinance, finds no support from the circumstances that caused its issuance.

Secondly, even if the TRO could be so construed, this Court cannot, in the exercise of its equity powers, interfere with a municipality's exercise of legislative powers. The Supreme Court has consistently held that "a court of equity cannot properly interfere with, or in advance restrain, the discretion of a municipal body while it is in exercise of powers that are legislative in their character." New Orleans Water Works Co. v. City of New Orleans, 164 U.S. 471, 481, 17 S. Ct. 161 (1896).

> "[T]he courts will pass the line that separates judicial from legislative authority if by any order, or in any mode, they assume to control the discretion with which municipal assemblies are invested when deliberating upon the adoption or rejection of ordinances proposed for their adoption. The passage of ordinances

3

>by such bodies are legislative acts, which a court of equity will not enjoin."

Id. "The mischievous consequences that may result from the attempt of the courts of equity to control the proceedings of municipal bodies when engaged in the consideration of matters entirely legislative in their character, are too apparent to permit such judicial action . . . ." 164 U.S. at 482. If and when a city does pass an ordinance that infringes on the rights of the others, "it will be time enough for equity to interfere, and by injunction prevent the execution of such ordinance." Id. *See also* McChord v. Cincinnati, New Orleans & Texas Pacific R.R., 183 U.S. 483, 497, 22 S. Ct. 165 (1902)("It is the legislative discretion which is exercised, and that discretion, whether rightfully or wrongfully exercised, is not subject to interference by the judiciary.")(quoting Alpers v. San Francisco, 32 F. 503, 507 (N.D. Cal. 1887)); Associated General Contractors of America v. City of Columbus, 172 F.3d 411, 415-416 (6th Cir. 1999)(citing New Orleans Waterworks Co. and other authorities for recognition that "the role of the court is to intervene, if at all, only after a legislative enactment has been passed"); Vincennes Water Supply Co. v. Public Services Commission, 34 F.2d 5, 9 (7th Cir. 1929)("[E]quity cannot interfere with, or in advance restrain, the discretion of a municipal body's exercise of legislative powers"); Real Estate Development Co. v. City of Florence, 327 F. Supp. 513, 515 (E.D. Ky. 1971)(holding that a court does not have the jurisdiction to "supervise or superintend" proceedings of a city council, such as enjoining enforcement of city's moratorium resolution in advance of adoption of any zoning ordinance); *see also* Montgomery Gas Light Co. v. City Council of Montgomery, 87 Ala. 245, 257, 86 So.113 (1989)(legislative action of municipal corporations cannot be enjoined).

In light of these authorities, it is obvious that this Court's preliminary injunction cannot lawfully be applied to prevent the City of Daphne from engaging in its legislative functions and

adopting a new City ordinance. If AT&T believes that enforcement of the new Ordinance against it will violate its constitutionally protected rights, it can certainly seek to persuade this Court of that fact, once it has exhausted administrative remedies in seeking relief from its requirements and a justiciable controversy exists. As AT&T describes in its motion, it has already replaced 352 of the 363 utility markers that were removed by the City, and these markers do not exceed 24 inches in height (Doc. 43-3 at p. 5), as required under the Court's consent order. (Doc. 33). These markers, and the few others that remain to be replaced, will not violate the height restrictions of the new Ordinance, so the Ordinance's height requirement will not adversely affect AT&T. The adverse impact of any other aspects of this new Ordinance, on AT&T's continuing contractual rights to provide service through its buried cables, is speculative at best. And whatever costs it may incur in maintaining the grass around the markers and labeling its markers with the information needed to assist in their location, such requirements do not implicate the Constitution. This Court has recognized that AT&T's exercise of its rights to operate telecommunication facilities along public rights-of-way is subject to the municipality's authority to regulate and control the use of its streets. *See* Bell South Communications, Inc. v. City of Mobile, 171 F.Supp.2d 1261, 1273 (S.D. Ala. 2001). Indeed, as this Court recognized in Bell South Communications, it has previously held, in Southern Bell Telephone and Telegraph Co. v. City of Mobile, 162 F. 523 (S.D. Ala. 1907) (upon which AT&T principally relied in seeking the TRO in the present case), that the telephone company's "rights . . . are subject to the reasonable regulations of the city municipality by virtue of its police power." 171 F. Supp.2d at 1273 (quoting Southern Bell Telephone, 162 F. at 533) And, in affirming the district court decision in Southern Bell Telephone, the 5th Circuit modified the injunctive decree to make it clear that the city was not restrained or enjoined "from exercising such control of the uses of said

property by complainant as is consistent with the proper exercise of the police power." Id. (quoting City of Mobile v. Southern Bell Telephone and Telegraph Co., 174 F.1020 (5th Cir. 1909)). AT&T has not cited any authority to show that any aspects of the new Ordinance are beyond the City's police powers in regulating the use of its rights-of-way. AT&T has cited no authority to show that its vested, contractual rights to supply telecommunication services through buried cables will be impaired by requiring it to reduce its few remaining, unremoved utility markers to 24" (as it has already done for most of its markers), or to keep the weeds down around the markers, or label its markers with location information. This is not the stuff of which a viable claim of unconstitutionality is made.

The City would also point out that AT&T comes into Court with unclean hands, having failed to comply with aspects of the preliminary injunction that it seeks to enforce against the City. That injunction (Doc. 33) was entered as a Consent Order through the agreement of the parties. The Order allowed AT&T or its contractors to replace the removed warning markers, but still required that they replace them at the 24" height requirement in substantially the same location where they had been removed. In addition, the Order required that AT&T "shall record the number of and general locations where any markers that were removed during July 10-12, 2018, are replaced, to a level of specificity consistent in substance with the following: 'replaced [quantity] markers on the [cardinal direction] side of [street name] between [cross street 1] and [cross street 2],' and shall provide such information to defendants." (Doc. 33). To date, apart from very limited, indecipherable information (copy attached as Ex. "A"), AT&T has failed to comply with the Order's requirements for specifying the location of its replaced markers.

In summary, the City did not intend to violate, and had no notice that it would violate, any Order of this Court by passing a new Right-of-Way Ordinance. Its primary impetus in doing

so was to enact new regulations to address a new and expanding technology – 5G wireless – in addition to providing a clarified and more comprehensive right-of-way ordinance in general. This lawsuit filed by AT&T and the Consent Order for injunctive relief entered by the Court are based on AT&T's allegations that the City did not have the authority to remove AT&T's utility warning markers based on the language of the prior Ordinance. As outlined above, that Consent Order cannot reasonably, or lawfully, be interpreted as precluding the City from enacting a new Ordinance to regulate this new technology or more comprehensively address other issues relating to the use of its rights-of-way.

## II. The Enactment Of New Ordinance 2019-08, Repealing And Replacing Ordinance 2017-22 Moots Plaintiff's Claims For Declaratory And Injunctive Relief Under The Old Ordinance

"A case generally becomes moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Flanigan's Enterprises, Inc. of Ga. v. City of Sandy Springs, Ga., 868 F.3d 1248, 1255 (11th Cir. 2017)(en banc)(quoting Powell v. McCormack, 395 U.S. 486, 496, 89 S. Ct. 1944, 1951 (1969)). The doctrine of "voluntary cessation" does provide an exception to this general rule, i.e, the "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." Id. (quoting United States v. W. T. Grant, 345 U.S. 629, 632, 73 S. Ct. 894, 897 (1953)). In the absence of such an exception, the federal courts would be compelled to dismiss the case while leaving the defendant "free to return to his old ways." Id. (quoting W. T. Grant, Co., 345 U.S. at 632). "However, the voluntary cessation exception to the mootness doctrine does not apply where 'subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" Id. (quoting Friends of the Earth v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189, 120 S. Ct. 693, 708 (2000)).

While the burden of proving mootness generally falls on the party asserting it, "governmental entities and officials have been given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities." Flanigan's Enterprises, 868 F.3d at 1256 (quoting Coral Springs Street Systems, Inc. v. City of Sunrise, 371 F.3d 1320, 1328-29 (11th Ciruit 2004)). As a result, "once the repeal of an ordinance has caused [the court's] jurisdiction to be questioned, [the plaintiff] bears the burden of presenting affirmative evidence that his challenge is no longer moot." Id. (quoting National Advertising Co. v. City of Miami, 402 F.3d 1329, 1334 (11th Cir. 2005)). "This is because both [the 11th Circuit] and the Supreme Court have repeatedly indicated that 'the repeal of a challenged statute is one of those events that makes it absolutely clear that the allegedly wrongful behavior . . . could not reasonably be expected to recur.'" Id. (quoting Harrell v. The Florida Bar, 608 F.3d 1241, 1265-66 (11th Cir. 2010)). "Because of the deference with which [the court] view[s] voluntary changes in government action, a plaintiff disputing a finding of mootness must present more than [m]ere speculation that the city may return to its previous ways." Id. (quoting City of Miami, 402 F.3d at 1334). "Under [the 11th Circuit's] case law, the mere power and authority to reenact is plainly an insufficient reason, standing alone, to raise a reasonable expectation that the city would do so." Id. at 1257 n. 4.

Most recently, in Flanigan's Enterprises, Inc. of Ga. v. City of Sandy Springs, Georgia, *supra*, the Eleventh Circuit, on rehearing *en banc*, reviewed its prior decisions and identified "three broad factors" which courts should consider in conducting an analysis of whether the evidence should lead to a reasonable expectation that the municipality will reverse course and reenact the allegedly offensive portion of an ordinance which it has repealed. "First, we ask whether the changing conduct resulted from substantial deliberation or is merely an attempt to

8

manipulate our jurisdiction." 868 F.3d at 1257.  This requires an examination of the timing of the repeal, the procedures used in enacting it, and any explanations independent of the litigation which may have motivated it.  Id.  "[T]he timing of the repealing legislation is not dispositive if the court concludes from other evidence that there is no reasonable expectation that the government action will reenact the challenged provisions." Id. at 1259.  Secondly, the court asks "whether the government's decision to terminate the challenged conduct was 'unambiguous.'" Id.  This requires a consideration of whether the actions that have been taken to allegedly moot the case "reflect a rejection of the challenged conduct that is both permanent and complete."  Id.  Thirdly, the court asks "whether the government has consistently maintained its commitment to the new policy or legislative scheme."  Id.

The Court in Flanagan's Enterprises concluded that there was no substantial evidence indicating a reasonable likelihood that the city would reenact an ordinance prohibiting the sale of sexual devices, following its repeal of the ordinance while the adult bookstore's appeal of the district court's dismissal of the bookstore's challenge to the ordinance was pending, and thus the city's repeal of the ordinance rendered moot the bookstore's due process-based claims for declaratory and injunctive relief.  Id. at 1260-1263.  Even though the timing of the repeal was suspect, being made years into the litigation and after the court of appeals had agreed to rehear the case *en banc*, the city had engaged in substantial deliberation prior to repeal, had voted on the repeal in open session during regularly scheduled meetings, and had repealed the ordinance unanimously with all members present.  The city also assured the Court on three separate occasions that it had no intention of reenacting the ordinance.  Further, the city had never shown any inclination to enforce the repealed ordinance.  Id.

Contrary to AT&T's insinuations as to some covert activity on the part of the City in enacting its new Ordinance, the proposed Ordinance was placed on the agenda at publicly-noticed meetings that followed the procedural requirements for such legislative enactments by this municipality. A draft of the Ordinance was presented on the agenda for the January 7, 2019, meeting of the Ordinance Committee of the Daphne City Council. (Exhibit "B" – Affidavit of Patrick Rudicell, ¶2). The Ordinance Committee was informed at that meeting that many of the proposed revisions were derived from a new national model ordinance and the City of Mobile's Right-of-Way Ordinance. Id. Moreover, most of the discussion at that meeting centered around wireless facilities being placed on other poles in the ROW, and whether that would cause any issues in the future if the City wished to move utilities underground. Id. The Ordinance Committee also discussed clarifying some of the provisions in the Ordinance relating to above-ground utility markers, including the height requirement that was already included in the 2017 version of the ROW Ordinance. Id. At that January meeting, the Ordinance Committee requested that City administrative and legal staff continue to work on the Ordinance and bring it back to the Committee. Id.

The new Right-of-Way Ordinance was placed on the agenda for the Ordinance Committee to review again at its meeting on February 4, 2019. (Rudicell Affidavit, ¶3). Revisions discussed at that meeting included a modified appeal procedure for permit denials, unique labeling/numbering of all above-grade structures in the ROW (including but not limited to towers, poles, and utility markers), record-keeping of the location of all above-grade structures placed in the City's ROW, and grass and weed maintenance around utility markers. Id. Public Works staff informed the Ordinance Committee at that meeting that the City's mowers have to navigate around utility markers, which results in unsightly high grass and weeds around the base

of the markers during the summer and obstruction of the markers which can be a safety issue. Id. The City was having to go behind its mowers with workers on foot, weed-eating around the markers at the City's own cost. Thus the City determined that the owners of those markers should be required to maintain the grass and weeds around the base of the markers with an herbicide or some other method during the summer. Id. The City Council was informed that the permit fees associated with the new wireless facilities were in line with what had been deemed reasonable by order of the Federal Communications Commission. Id. Public Works staff also informed the City Council that calls had been coming in from wireless utility providers about permitting the installation of wireless facilities in the City's ROW, but the existing Ordinance at that time did not address wireless facilities. Id. The Ordinance Committee recommended the new Ordinance to the City Council for consideration at that time. Id.

The new Right-of-Way Ordinance was placed on the publicly published agenda for the February 18, 2019, City Council meeting. (Rudicell Affidavit, ¶4). The City also published on its website a packet for the February 18 council meeting that included a clean copy of the new ROW Ordinance. Id. Whenever an Ordinance is submitted to the Council for consideration, it is automatically held over until the following Council meeting. Id. Because this was the "First Read" of the new ROW Ordinance, the Council did not discuss it or vote on it on February 18, 2019. Id.

The new ROW Ordinance was again on the publicly published agenda for the March 4, 2019, City Council meeting. (Rudicell Affidavit, ¶5). The City again published a clean copy of the new Right-of-Way Ordinance on its website in the packet for the March 4 Council meeting. Id. The City Council adopted Ordinance 2019-08 as its new ROW Ordinance at the March 4, 2019, meeting. Id. The City adopted Ordinance 2019-08 to repeal and replace Ordinance 2017-

22 and there is no intention to re-adopt Ordinance 2017-22. (Rudicell Affidavit, ¶5). The adoption of this new Right-of-Way Ordinance was not intended to target AT&T, but simply applies to all persons and entities doing work or otherwise constructing or maintaining facilities in the City's right-of-way. (Rudicell Affidavit, ¶6).

In summary, the new Right-of-Way Ordinance enacted by the City of Daphne is a more comprehensive scheme for the maintenance of the City's right-of-way that now includes special permits for wireless facilities and their support structures. *See* Ordinance 2019-08, §III, (e). It also now expressly applies the 24-inch height requirements for utility markers to those markers installed prior to the effective date of the ordinance. §IV, (i)(1). Obviously, the City is not going to revert back to its earlier, less comprehensive ordinance. To the extent any further assurance is necessary, the undersigned counsel has the authority to represent to the Court, on behalf of the City, that the City has no intention of reenacting its older Right-of-Way Ordinance, which has been expressly repealed and replaced by the new Ordinance. That assurance is also provided in the affidavit of Mr. Rudicell. Such assurances have generally been held sufficient to demonstrate that the City will not do so. *See* Flanigan's Enterprises, Inc. of Ga., 868 F.3d at 1262; Coral Springs, 371 F.3d at 1333.

Quite simply, there is no longer an ordinance which applies only to new construction; it now applies to all utility markers, whether installed before or after the new Ordinance. The primary bases for AT&T's request for TRO and preliminary injunctive relief, and the grounds upon which this Court issued a TRO, are thus removed. The arguments of AT&T that this Court found persuasive in entering the TRO (which arguments, of course, the City had no opportunity to oppose before the entry of the TRO) were (1) the actions of the City in removing the markers installed prior to enactment of the old ordinance were not permitted under the Ordinance which

applied to new construction only; (2) the Ordinance contained no such "self-help" remedy, permitting physical removal of non-compliant markers; and (3) the Ordinance, in requiring previously installed markers to be 24" or less in height, deprived AT&T of its "vested" rights, contractual in nature, to bury its facilities and place warning markers in City rights-of-way (Doc. 2 at pp. 13-18; Doc. 8 at p. 6). Grounds (1) and (2) no longer provide valid grounds for injunctive relief under the new Ordinance, it being now expressly retroactive and there being no actual or threatened physical removal of utility markers by the City. The new Ordinance gives all persons with pre-existing utility markers six months from the date of its adoption to comply (§ IV(g)(8) and (i)(1)).

Ground (3) is also an unavailing basis to support any continued injunctive relief in this matter. In support of its "vested rights" argument, AT&T relied principally upon the old district court decision in Southern Bell Tel and Telegraph Co. v. City of Mobile, 162 F. 523 (S.D. Ala. 1907), in which the court held the city could not, by new ordinance, require the removal of the telephone company's above-ground poles, installed permissibly in a right of way granted to the company for that purpose. That case lends no support to a conclusion that the City does not have the police power to reasonably restrict the height or other features of AT&T's utility markers in the City's right-of-way. Indeed, the 5th Circuit on appeal expressly limited the district court's injunction so as not to impair such police powers of the city. *See* discussion *supra* at p. 5. "[T]here are no vested rights against a due exercise of the police power,…." Swann v. City of Graysville, 367 So. 2d 952, 954 (Ala. 1979)(quoting USA Oil corp. v. City of Lipscomb, 293 Ala. 103, 300 So. 2d 362 (1974)). There is also a significant difference between requiring the removal of a telephone pole and simply requiring the replacement of an above-ground utility marker of one height to a lower height requirement. These above-ground utility markers used by

AT&T and other utilities are generally made of PVC pipe and are not typically connected to anything, but simply mark the general location of underground utilities. Even if AT&T had some vested right in the existence of the above-ground warning marker itself, which the City disputes, there is no right to maintain the marker at a specific height. The City does not take away any alleged vested right to have utility markers but simply requires that those markers be maintained at a certain height and that the Plaintiff provide certain identification information regarding those markers. Moreover, any argument that vested rights have somehow been impaired by the 24" height requirement has also been essentially undercut by AT&T's own agreement to replace its markers at this height. There is simply no basis for any continued injunctive relief with the passage of this new ROW Ordinance. The City cannot be precluded in this manner from exercising its legislative authority to enact reasonable regulations of its rights-of-way.

Finally, any claim that the new Ordinance has impaired or otherwise violated AT&T's rights is premature. Under the new Ordinance, the City may grant a special exception to the requirements of the Ordinance if the applicant/permittee demonstrates (1) that the exception will not create any threat to public health, safety or welfare, (2) that the increased economic burden and the potential adverse impact on the applicant's/permittee's construction schedule resulting from strict enforcement of the Ordinance prohibits the ability of the applicant/permittee to provide utility service in the City and (3) the requirement unreasonably discriminates against the applicant/permittee in favor of another person. Ord. 2019-08, §II(b)(1). Furthermore, an applicant aggrieved by a decision of the ROW manager in the administration of the Ordinance may appeal the decision to the public works department and thereafter to the city administration and finally to the city council. Ord. 2019-08, §II(b)(2). These administrative remedies must be

exhausted before any justiciable controversy would exist that this Court could adjudicate, as to the validity of any enforcement of the Ordinance against AT&T. And, even then, injunctive relief against enforcement of the Ordinance must generally await a full trial on the merits:

> "I[n] this country, democracy in government is, of course, viewed as a good and normal thing. When a federal court before trial enjoins the enforcement of a municipal ordinance adopted by a duly elected city council, the court overrules the decision of the elected representatives of the people and, thus, in a sense interferes with the processes of democratic government. Such a step can occasionally be justified by the Constitution (itself the highest product of democratic processes). Still, preliminary injunctions of legislative enactments — because they interfere with the democratic process and lack the safeguards against abuse or error that comes with a full trial on the merits — must be granted reluctantly and only upon a clear showing that the injunction before trial is definitely demanded by the Constitution and by the other strict legal and equitable principles that restrain courts."

Southbark, Inc. v. Mobile County Commission, Civil Action No. 13-00183-KD-M, 2013 WL 3168761, at *4 (S. D. Ala. June 20, 2013)(quoting Northeastern Florida Chapter of Ass'n of General Contractors of America v. City of Jacksonville, Fla., 896 F.2d 1283, 1285 (11th Cir. 1990)).

## CONCLUSION

In summary, the City submits that its adoption of the new Ordinance has not, by any stretch of the imagination, violated the specific terms of this Court's preliminary injunction. Even if the injunction could be interpreted to apply to such future legislative acts, this Court would not have the equitable power to enjoin the City's legislative body from adopting new ordinances. And, contrary to AT&T's suggestion, the City's new Ordinance does, indeed, moot its request for declaratory and injunctive relief, which is wholly premised upon the original Ordinance and its terms, and upon the City's physical removal of AT&T's utility markers pursuant to that earlier Ordinance. The necessity for any declaratory or injunctive relief under the new Ordinance can only be determined if and when AT&T has identified some aspect of the

Ordinance that violates its rights, has exhausted all administrative remedies under the Ordinance, and can present a justiciable controversy under the new Ordinance to this Court.

                                                                      /s/ William W. Watts
                                                    THOMAS O. GAILLARD, III (GAILT9459)
                                                    J. CASEY PIPES (PIPEJ4046)
                                                    WILLIAM W. WATTS (WATTW5095)
                                                    *Attorneys for Defendant City of Daphne*

**OF COUNSEL:**
HELMSING, LEACH, HERLONG,
NEWMAN & ROUSE, P.C.
P.O. Box 2767
Mobile, AL 36652
(251) 432-5521 Telephone
(251) 432-0633
E-Mail: tog@helmsinglaw.com

## **CERTIFICATE OF SERVICE**

I do hereby certify that I have on this the 22nd day of March, 2019, electronically filed the foregoing pleading CM/ECF system which will send electronic notification of such filing to the following undersigned counsel of record:

Jeffrey E. Holmes, Esquire (*jholmes@bhpwlaw.com*)
Boles Holmes Parkman White, LLC
1929 Third Avenue North, Suite 500
Birmingham, Alabama 35203
*Attorney for Plaintiffs*

Michael J. Breslin, Esquire (*mbreslin@kilpatricktownsend.com*)
Stephanie N. Bedard, Esquire (*sbedard@kilpatricktownsend.com*)
Kilpatrick, Townsend & Stockton, LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309
*Attorneys for Plaintiffs*

> */s/ William W. Watts*
> OF COUNSEL

Doc. 612398