# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| BELLSOUTH TELECOMMUNICATIONS, LLC., d/b/a AT&T ALABAMA, *et al.*, | : : : | |
| Plaintiffs, | : | |
| vs. | : | CIVIL ACTION NO. 1:18-cv-335-TFM-N |
| CITY OF DAPHNE, *et al.*, | : | |
| Defendants. | : | |

## ORDER

Pending before the Court is *Plaintiffs' Emergency Motion and Memorandum of Law to Enforce Preliminary Injunction and for Award of Fees, Costs and Other Appropriate Relief* ("motion to enforce preliminary injunction"). Doc. 43, filed March 15, 2019. Plaintiffs request the Court issue emergency relief to enforce the preliminary injunction[1] that was entered by the Court on September 18, 2018, in this matter, forestall the enactment of City of Daphne Ordinance 2019-08 ("Ordinance 2019-08"), award Plaintiffs their costs and fees that are associated with this motion, and award other further relief and sanctions that the Court deems appropriate against Defendants. Doc. 43, at 2.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs have communication lines, fiber optic cables, and related facilities ("lines") buried throughout the City of Daphne ("the City"). Doc. 2-2, p. 2 ¶ 2. The lines are located within public rights-of-way and private easements, and they provide communications pathways for the

---

[1] By order of the Court, the temporary restraining order that was entered against Defendants (Doc. 8) was converted into a preliminary injunction (Doc. 33).

public, private industry, and government agencies, including the City's residents, emergency 911 services, and military installations. *Id.* at ¶¶ 2-3. The lines also carry traffic communications of other large communications companies. *Id.*

To prevent damage to the lines, Plaintiffs regularly and routinely install utility warning markers ("markers") above the buried lines and cables. *Id.* at ¶ 6. Markers are generally plastic tubes of varying height that make it easier to spot them in tall grass. *Id.* at ¶ 7. The markers provide notice of the presence of the underground lines and remind excavators and blasters to call 811 before beginning their work. *Id.* at ¶ 6.

In March 2017, the City enacted Ordinance No. 2017-22, which requires an applicant for a proposed right-of-way construction permit to submit "Construction plans" to the City, under which the utility markers left above ground must be limited to the height of twenty-four (24) inches for all construction projects that involve the installation of buried lines that extend 500 feet or more. Doc. 2-2, p. 25 ¶ I(A)(1)(a)(1)(b). On July 10, 2018, City Code Enforcement Officers began removing Plaintiffs' markers. Doc. 2-2, ¶ 13. The officers reportedly removed or destroyed at least 317 of Plaintiffs' markers, including markers that were in place prior to Ordinance No. 2017-22 and markers that were not in a City right-of-way, but on private property or state rights-of-way. Doc. 2-2, ¶16; Doc. 2-1, ¶ 10. Plaintiffs and Defendants communicated about the issues and at times Defendants agreed to halt the removal or destruction of the markers, but ultimately gave Plaintiffs until Friday, July 27, 2018, to submit a proposed compliance plan that would outline in detail their plan to bring all of its markers into compliance and have indicated they would resume removal of the markers. Doc. 2-4, pp. 8-9.

Plaintiffs filed on July 27, 2018, their Complaint for Emergency and Permanent Injunctive Relief, Declaratory Relief, and Monetary Damages in which Plaintiffs bring claims against Defendants for declaratory judgment, preliminary and permanent injunctive relief, unlawful taking

under the federal and Alabama constitutions, denial of procedural due process under the federal and Alabama constitutions, violation of the Equal Protection Clause of the federal constitution, violation of the contract clauses of the federal and Alabama constitutions, trespass, and conversion. Doc. 1, ¶¶ 31-87. Plaintiff contemporaneously filed their Motion for a Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not be Entered ("motion for TRO") in which they sought a temporary restraining order against Defendants to halt them from removing the markers and for Defendants to show cause why a preliminary injunction should not issue. Doc. 2, at 3. On July 30, 2018, the Court granted Plaintiff's motion for TRO and ordered:

> Defendants, the City of Daphne, Alabama, Dane Haygood and Jeremy Sasser, and anyone acting on their behalf, shall (a) immediately cease all efforts to remove, modify or destroy any of Plaintiffs' buried utility warning markers, and (b) refrain from any conduct that interferes with, modifies, removes or destroys any of Plaintiffs' buried utility warning markers.

Doc. 8, at 6. Upon motion of the parties (Doc. 24), on September 8, 2018, the Court entered their Consent Order Entering Interim Injunctive Relief and Resetting Preliminary Injunction Hearing, which extended the TRO until a preliminary injunction hearing could be held and added additional language to the original TRO:

> Additionally, Plaintiffs or Plaintiffs' contractors shall be permitted, immediately and without any requirement to obtain any permit or other permission from, or to make any payment to, Defendants or any of Defendants' agents, to replace Plaintiffs' buried utility warning markers that were removed during July 10-12, 2018 at a height not to exceed 24 inches in substantially the same location as the removed markers, provided that Plaintiffs or any of Plaintiffs' contractors, while performing the replacement work, will not cause any land disturbance other than that necessary for the replacement work.
>
> Plaintiffs shall record the number of and general locations where any markers that were removed during July 10-12, 2018 are replaced, to a level of specificity consistent in substance with the following: "replaced [quantity] markers on the [cardinal direction] side of [street name] between [cross street 1] and [cross street 2]," and shall provide such information to Defendants.

Doc. 25, at 2; *see also* Doc. 30.

Before a preliminary injunction hearing could be held, the parties filed on September 18, 2018, their Joint Motion to Issue a Preliminary Injunction Based on the Temporary Restraining Order and Consent Orders (Doc. 32), which the Court granted, and the terms of the TRO were entered as a preliminary injunction (Doc. 33). On March 15, 2019, Plaintiffs' filed their instant motion to enforce preliminary injunction (Doc. 43), for which the Court issued a show cause order (Doc. 45) and Defendants filed their response (Doc. 46).

## ANALYSIS AND DISCUSSION

In Plaintiffs' motion to enforce preliminary injunction, they contend Defendants violated the Court's preliminary injunction when Defendants enacted a new ordinance, Ordinance 2019-08, which purports to replace Ordinance No. 2017-22 (Doc. 43-2, at 1), under which Defendant City of Daphne ("Defendant" or "the City") originally claimed to have authority to remove Plaintiffs' markers, which actions spawned this litigation and the preliminary injunction (*see* Doc. 1). Plaintiffs contend Ordinance 2019-08 was passed by the City without notice to Plaintiffs (Doc. 43, at 4-5) and purports to require all utility markers to (1) "not exceed 24 inches in height," (2) be placed "no more frequently than every 300 feet or line of sight, whichever is less," and (3) have a "permanently affixed" a "display" that contains "the identification of the utility provider . . . [and] a unique serial number," and "legible contact information for the person owning the utility marker, including a valid telephone number with area code." Ordinance 2019-08 §§ IV(g)(6), IV(i)(1). Ordinance 2019-08 also purports to apply such requirements retroactively to pre-existing utility markers. *See id.* at §§ IV(g)(8), IV(i)(1). Ordinance 2019-08 also purports to require Plaintiffs to "maintain a record of the specific latitude/longitude coordinates of all [its markers]"; update and provide those location records and a map of the marker locations to the City at least once every six (6) months; and "ensure that grass and weeds surrounding the base of each utility marker are controlled either by weekly trimming or the targeted application of EPA approved

herbicides," subject to "a fee of twenty dollar ($20.00) [per occurrence] for each utility marker" where the surrounding grass is "in excess of three (3) inches in height above grade." *Id.* at §§ IV(g)(8), (i)(1), & (i)(3).

Ordinance 2019-08 states it shall "take effect and be in force from and after the date of its approval by the City Council of Daphne and publications as required by law." *Id.* at § XII. As Plaintiffs understand the law, they state Ordinance 2019-08 became effective after it was published on the City's website.[2] Doc. 43, at 6.

In Defendants' response, they argue the preliminary injunction does not proscribe the City's ability to enact a new ordinance and, even if the injunction could be so construed, the Court cannot interfere with a municipality's exercise of legislative power. Doc. 46, at 2-7. Additionally, because Ordinance 2019-08 replaces Ordinance 2017-22, Plaintiff's claims for declaratory and injunctive relief are moot. Doc. 46, at 7-15.

As to Defendants' argument that the preliminary injunction does not proscribe the City's ability to enact a new ordinance, Fed. R. Civ. P. 65(d) states, "Every order granting an injunction and every restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail-and not by referring to the complaint or other document-the act or acts restrained or required." FED. R. CIV. P. 65(d)(1)(A)-(C). While the injunction does not explicitly state Defendants are enjoined from enacting new right-of-way legislation, Plaintiffs argue Ordinance 2019-08 and its enactment are an "effort to remove, modify or destroy" and "conduct that interferes with, modifies, removes or destroys" Plaintiffs' markers. Doc. 43, at 6-8.

---

[2] As of the date of this Order, Ordinance 2019-08 is published on the City's website, a PDF version of which can be found at the following URL: http://www.daphneal.com/DocumentCenter/View/1402/Ordinance-2019-08--New-Right-of-Way-Ordinance.

Defendants also argue the Court cannot interfere with a municipality's exercise of legislative power and cite to *New Orleans Water Works Co. v. City of New Orleans*, 164 U.S. 471, 481, 17 S. Ct. 161, 165, 41 L. Ed. 518 (1896), for the proposition:

> [T]he courts will pass the line that separates judicial from legislative authority if by any order, or in any mode, they assume to control the discretion with which municipal assemblies are invested when deliberating upon the adoption or rejection or ordinances proposed for their adoption. The passages of ordinances by such bodies are legislative acts, which a court of equity will not enjoin.

*Id.* (citations omitted). This proposition is bolstered by the Eleventh Circuit Court of Appeals' following statement in *Northeastern Florida Chapter of Ass'n of General Contractors of America v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990):

> In this country, democracy in government is, of course, viewed as a good and normal thing. When a federal court before trial enjoins the enforcement of a municipal ordinance adopted by a duly elected city council, the court overrules the decision of the elected representatives of the people and, thus, in a sense interferes with the processes of democratic government. Such a step can occasionally be justified by the Constitution (itself the highest product of democratic processes). Still, preliminary injunctions of legislative enactments—because they interfere with the democratic process and lack the safeguards against abuse or error that come with a full trial on the merits—must be granted reluctantly and only upon a clear showing that the injunction before trial is definitely demanded by the Constitution and by the other strict legal and equitable principles that restrain courts.

However, the preliminary injunction and its terms were entered by the Court at the joint request of the parties prior to Ordinance 2019-08's enactment, and Defendants cannot now argue Plaintiffs seek to interfere with the legislative process by enjoining Ordinance 2019-08's enforcement as to them. Therefore, the Court will look to the terms of, and the reasons for, the preliminary injunction to determine whether it was violated.

The preliminary injunction was originally entered to halt the destruction and removal of Plaintiffs' markers, which Plaintiffs contended, and the Court found, would jeopardize the safety and continued operation of their communications facilities and would impair their ability to meet their contractual obligations, cause reputational harm, and result in unquantifiable loss of

customers and good will. Doc. 8, at 4-5. By the terms of the preliminary injunction, Plaintiffs are allowed to replace the removed markers at a height not to exceed twenty-four (24) inches and are directed to record their location in a specific manner. Doc. 33, at 2. Ordinance 2019-08 requires all utility markers to not exceed twenty-four inches in height; be placed no more frequently than every 300 feet or line of sight, whichever is less; affix a display that identifies the utility provider, a unique serial number, and the utility provider's contact information; and requires the utility provider to provide to the City prescribed location information. Ordinance 2019-08 §§ IV(g)(6)-(7), IV(i)(1). For those markers that were installed before the Ordinance 2019-08 came into effect, they must be brought within compliance within six (6) months. *Id.* at §§ IV(g)(8), IV(i)(1). Ordinance 2019-08 imposes a twenty dollar ($20.00) fine for each occurrence that a marker violates the ordinance's terms. *Id.* at § IV(i)(3). While the preliminary injunction allows Plaintiffs to replace the markers that were removed, not all of them have been replaced (Doc. 43-3, at 5), so those markers that have not been replaced, but will be replaced after the effective date of Ordinance 2019-08, would purportedly have new parameters that apply to them.

However, Plaintiffs have not shown the City has taken actions to enforce Ordinance 2019-08 that would violate the terms of the preliminary injunction. Despite Ordinance 2019-08, the preliminary injunction covers the markers that were previously removed and allows Plaintiffs to replace them in the manner to which the parties agreed. Once the remaining markers are replaced by Plaintiffs, the impetus for the preliminary injunction in this matter will be extinguished. Whether Plaintiffs' remaining replacement markers comply with Ordinance 2019-08 is a decision for Plaintiffs, and they will have six (6) months from the effective date of Ordinance 2019-08 for their already replaced markers to comply with the ordinance's terms or face fines rather than the removal of their markers. Therefore, the Court finds Defendants have not violated the preliminary injunction, since they have not attempted to enforce Ordinance 2019-08 as to Plaintiffs.

As to Defendants' argument that Ordinance 2019-08 moots Plaintiffs' claims for declaratory and injunctive relief, the Court finds that argument unavailing. As previously discussed, the preliminary injunction was entered to halt the destruction and removal of Plaintiffs' markers and allowed them to replace those markers, all of which have not been replaced.

Accordingly, Plaintiffs' Emergency Motion and Memorandum of Law to Enforce Preliminary Injunction and for Award of Fees, Costs and Other Appropriate Relief (Doc. 43) is hereby **DENIED**. To the extent Defendants assert this case has been rendered moot, that is also **DENIED**. The preliminary injunction remains in full force and effect.

**DONE** and **ORDERED** this the 4th day of April 2019.

/ s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE